UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LUIS ALBERTO RIVERO GUZMAN,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

Case No. C26-3138-MLP

ORDER

Petitioner Luis Alberto Rivero Guzman is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas action, asserting his August 27, 2026, arrest and redetention without first receiving notice or an opportunity to be heard, violated his Fifth Amendment right to due process. (Dkt. # 1, ¶¶ 1, 28, 30-42.) He seeks release from custody and permanent injunctive relief related to any future redetention. (*Id*. at 10-11.) Respondents filed a return (dkt. # 6), together with declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Nhat Truong (dkt. # 7) ("Truong Decl.") and their counsel, Katherine G. Collins (dkt. # 8) ("Collins Decl."). Petitioner filed a traverse (dkt. # 9) along with a separate declaration (dkt. # 10) ("Rivero Guzman Decl.").

Having considered the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1) for the reasons set forth below.[1]

## I. BACKGROUND

Petitioner is a citizen of Venezuela who applied for admission into the United States from Mexico at the San Ysidro Port of Entry on December 21, 2023. (Truong Decl., ¶¶ 3-4.) Customs and Border Protection ("CBP") determined Petitioner lacked valid entry documents to legally enter the United States. (*Id.* ¶ 4.) Petitioner was briefly detained and, the following day, was served with a Notice to Appear ("NTA"), charging him with being inadmissible under the Immigration and Nationality Act ("INA"). (*Id.* ¶ 5; *see* Collins Decl., ¶ 2, Ex. B at 2.) The NTA was filed with the Los Angeles immigration court the same day. (Truong Decl., ¶ 6.) Petitioner was thereafter paroled into the United States after being issued a Form I-94. (*Id.* ¶ 7; *see* dkt. # 1-2 at 2.) Officer Truong asserts Petitioner was paroled pursuant to INA § 212(d)(5)[2], which was set to expire on December 22, 2025. (Truong Decl., ¶ 7.)

Petitioner was originally scheduled to attend future immigration proceedings in Los Angeles immigration court, but he filed a motion to change venue to the Portland immigration court after moving to the Gresham, Oregon area. (Dkt. # 1, ¶¶ 23-24.) Petitioner's motion was granted and the Portland, Oregon immigration court scheduled Petitioner's next immigration hearing for February 15, 2028. (*Id.* ¶ 25; *see* dkt. # 1-4 (Notice of In-Person Hearing).)

While released, Petitioner filed an application for asylum, obtained a social security card (dkt. # 1-6 at 2) and was authorized by United States Citizenship and Immigration Services

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 4.)

[2] INA § 212(d)(5) is codified at 8 U.S.C. § 1182(d)(5), which provides statutory authority for the Secretary of Homeland Security to temporarily parole noncitizens "under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States[.]" 8 U.S.C. § 1182(d)(5)(A).

("USCIS") to work in the United States until July 13, 2030. (Dkt. # 1-5 at 2.) Petitioner maintained employment with several driving and delivery services, and supported himself and his partner, who also has a pending asylum application. (Dkt. 1, ¶ 25.) Petitioner asserts DHS "never assigned him ICE-ERO or ISAP [Intensive Supervision Appearance Program] appointments." (*Id.* ¶ 26; *see* Rivero Guzman Decl., ¶ 2.)

On August 27, 2026, ICE Enforcement and Removal Operations ("ERO") officers located Petitioner in Gresham, Oregon, "verified his identity", and "advised him that he was under arrest for violating immigration law." (Truong Decl., ¶ 9.)

ICE Deportation Officer Shahat completed a Form I-213 immigration "Record of Deportable/Inadmissible [Noncitizen]" the same day, which documents Petitioner's arrest. (Collins Decl., ¶ 2, Ex. D.) Officer Shahat documented that ICE identified Petitioner as a "Guatemalan [n]ational currently present in the [United States] without lawful status." (*Id.* at 3.) Officer Shahat acknowledges in his report that Petitioner was paroled in 2023 and had an immigration hearing scheduled for February 15, 2028, but asserts that, "[r]ecord checks also revealed that [Petitioner] had not checked in with ERO as required" and that "[n]o record of a legal entry or status or pending applications could be found." (*Id.*)

Respondents acknowledge in a footnote in their return that "no such record of such a requirement or failure to check in could be located." (Dkt. # 6 at 3 n.4.) Respondents also acknowledge that Officer Shahat's report incorrectly documents that Petitioner did not have a pending asylum application. (*Id.*) Respondents do not acknowledge or explain why Officer Shahat characterized Petitioner as a "Guatemalan national." (*See generally* dkt. # 6.)

Petitioner was transported to the Portland ICE field office for additional processing. (*Id.*) ICE served Petitioner with a Warrant for Arrest of Alien (Form I-200) and a Notice of Custody

Determination (Form I-286). (*Id.* ¶ 10.) The Notice of Custody Determination is not in the record.

Petitioner was scheduled to attend an immigration merits hearing on September 16, 2026 while this case was pending. (Truong Decl., ¶ 11.) It is unknown to the Court whether that hearing occurred.

On September 2, 2026, Petitioner filed the instant petition. (Dkt. # 1.)

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner's sole claim asserts that Respondents violated his Fifth Amendment right to procedural due process when they redetained him without first providing notice and an individualized hearing before a neutral decisionmaker. (Dkt. # 1, ¶¶ 39-42.) Petitioner further contends that the three-part framework articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), used to assess whether a particular governmental action comports with due process, compels his release. (*Id.* ¶¶ 34-36.)

Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and that under *Mathews*, Petitioner was not entitled to pre-deprivation process. (Dkt. # 6 at 5-8.)

### A. Statutory Detention Authority

Although Respondents assert that § 1225(b) mandates Petitioner's detention, separate from any statute purportedly authorizing Petitioner's current detention, the government "remain[ed] obligated to effectuate [his] detention in a manner that comport[ed] with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (citing *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1033–34, (N.D. Cal. 2025)). Here, Petitioner does not challenge the statutory classification of his detention, but rather the lack of process provided by the government when they redetained him on August 27, 2026. (*See generally* dkt. # 1.) Given that Petitioner's claim is constitutional, not statutory, the government's "arguments regarding their statutory authority to detain Petitioner are [irrelevant] and the Court need not consider them." *See Sarwari v. Wamsley*, 2026 WL 279968, at *3 (W.D. Wash. Feb. 3, 2026); *see also P.T. v. Hermosillo*, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected. In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.").

### B. *Mathews* and Due Process

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews*, 424 U.S. at 332. In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of

additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see E.A. T.-B.*, 795 F. Supp. 3d at 1321 n.4 (collecting cases).

1. *Petitioner had a liberty interest in remaining free.*

Respondents "recognize the 'weighty liberty interests implicated by the Government's detention of noncitizens'" but assert that because Petitioner was paroled, "Supreme Court precedent requires a 'legal fiction' to be imposed on [him] so that he is treated as at the threshold of entry - as opposed to within this country's borders." (Dkt. # 6 at 9 (citing and quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)).) Thus, according to Respondents, Petitioner "remains in a fundamentally different and less protected position than 'those who are within the United States after an entry, irrespective of its legality.'" (*Id.* (citations omitted).)

Courts have questioned and rejected the extension of this "entry fiction" to challenges involving a noncitizen's immigration detention. *See Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (noting that when a petitioner "do[es] not challenge the admission process in any way or assert a right to remain in the United States," the entry fiction doctrine is inapplicable); *Torres v. Hermosillo*, 2026 WL 145715, at *4 (W.D. Wash. Jan. 20, 2026) (acknowledging the "Supreme Court has never applied the entry fiction doctrine to a case like this—to constitutionally justify the *detention* of a person living freely, for years, within the United States[.]") (citation omitted) (emphasis in original). Accordingly, the Court does not find that Petitioner had a reduced liberty interest solely on the basis of being paroled.

Indeed, "[t]he Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their

continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (finding a parolee had an interest in his continued liberty). That interest did "not expire along with [Petitioner's] parole." *Quiroga-Chaparro v. Warden of the Golden State Annex Det. Facility*, 2025 WL 3771473, at *4 (E.D. Cal. Dec. 31, 2025). The fact that Petitioner pursued asylum, maintained employment, and supported his partner while released only serves to strengthen that interest. The first factor weighs in Petitioner's favor.

*2. There was a high risk of erroneous deprivation and value in safeguards.*

The fact that Respondents have conceded two mistakes by ICE agents on the date of Petitioner's redetention demonstrates a high risk of erroneous deprivation and value additional safeguards would have provided. As noted, Officer Shahat appears to have arrested and redetained Petitioner on August 27, 2026, because he determined Petitioner "had not checked in with ERO as required." (Collins Decl., ¶ 2, Ex. D at 3.) Respondents concede here that no such requirement existed. (Dkt. # 6 at 4 n.4.) Respondents further concede that, contrary to Officer Shahat's report, Petitioner did, in fact, have a pending asylum application at the time of his redetention. (*Id.*)

Nevertheless, Respondents maintain the risk of error was low because Petitioner's parole had expired, which caused Petitioner to revert back to an "arriving [noncitizen]" subject to mandatory detention under § 1225(b). (Dkt. # 6 at 7.) As noted above, however, any statutory authority to detain is an issue separate from whether adequate process was provided under the Fifth Amendment. *See supra*, part A. Moreover, ICE did not redetain Petitioner because of his purported parole expiration; they redetained him after wrongly determining that he failed to check in with ERO. So, although Respondents' return memorandum offers reasoning that could

have ostensibly provided a basis to redetain Petitioner, "[p]ost hoc explanations of agency action by . . . counsel cannot substitute for the agency's own articulation of the basis for its decision." *Arrington v. Daniels*, 516 F.3d 1106, 1113 (9th Cir. 2008).

To parole Petitioner in 2023, DHS was first required to find that Petitioner "present[ed] neither a security risk nor a risk of absconding." *See* 8 C.F.R. § 212.5(b). There is no evidence that Petitioner violated any condition of parole or that any changed circumstances arose that suggests Petitioner became a flight risk or danger to the community. And there is no evidence that Respondents sought Petitioner's return to custody on his parole's expiration date. Instead, it is undisputed that Petitioner remained out of custody until Officer Shahat redetained him on August 27, 2026—over eight months after his parole purportedly expired. Additional procedural safeguards would have provided an opportunity for Petitioner to challenge the basis for his redetention. Forgoing that process presented a high risk that Petitioner's interest in remaining free would be erroneous deprived. The second *Mathews* factor weighs in Petitioner's favor.

*3. The government's purported interests do not justify forgoing process.*

Respondents identify two governmental interests: preventing noncitizens from remaining in the United States "in violation of the law" and "protecting immigration proceedings from unnecessary delay." (Dkt. # 6 at 8 (citations omitted).) Respondents do not identify what law Petitioner was violating on the date he was redetained other than lacking lawful status—a fact of which the government was certainly aware when they paroled him into the United States and subsequently scheduled him for an immigration hearing to occur in 2028. Nor do Respondents explain how Petitioner caused any delay in his immigration proceedings. The record shows that Petitioner timely pursued asylum and work authorization and was already scheduled to attend an immigration hearing in 2028, which again, was set by the government.

It is not clear to the Court how these purported interests would have been undermined by first providing Petitioner with notice of his redetention and an opportunity to be heard. "[T]he Government's interest in re-detaining non-citizens previously released without a hearing is low." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. *See also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). The Court does not find Respondents' asserted interests justify providing effectively no pre-deprivation process. This last factor weighs in Petitioner's favor.

In sum, all three *Mathews* factors weigh in Petitioner's favor. Given Petitioner's liberty interest at stake, the high risk of erroneous deprivation, and the identified governmental interests, providing no pre-deprivation process was constitutionally deficient. Habeas relief is therefore warranted, and release is the appropriate and constitutionally required remedy. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1204 (W.D. Wash. 2025).

**C. Injunctive Relief**

Petitioner seeks to enjoin Respondents from redetaining him during the pendency of his removal proceedings absent written notice and a hearing prior to redetention, where Respondents would bear the burden by clear and convincing evidence that he is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks. (Dkt. # 1 at 10.) The petition does not develop a factual record or present legal authority supporting Petitioner's request except in the traverse. (*See generally id.*; dkt. # 9 at 10-12.)

The Court will not consider Petitioner's request briefed for the first time in reply—particularly considering Respondents have not had an opportunity to respond. *See Zamani v.*

*Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *Calderon v. Noem*, 2025 WL 3754042, at *4 (W.D. Wash. Dec. 29, 2025), *appeal dismissed*, No. 26-1267, 2026 WL 1587520 (9th Cir. Apr. 2, 2026). His request is therefore DENIED.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part. Respondents shall RELEASE Petitioner from immigration detention within **twenty-four (24) hours**, subject to his most recent pre-detention conditions of release.

(2) Respondents shall file a status report with the Court confirming Petitioner's release within **two (2) business days**

(3) Petitioner's request for injunctive relief is DENIED without prejudice.

(4) The Clerk shall direct copies of this Order to all counsel of record.

Dated this 25th day of September, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge